UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY BODELL,

             Petitioner,

v.

CLARICE STOVALL,

             Respondent.

_____/

Case No. 08-cv-15204

HONORABLE ARTHUR J. TARNOW

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ISSUING A CERTIFICATE OF APPEALABILITY AS TO THE SECOND ISSUE**

Shirley Bodell, ("Petitioner"), presently confined at the Women's Huron Valley Correctional Facility, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In her pro se application, Petitioner challenges her convictions for two counts of armed robbery, M.C.L.A. 750.529, on the grounds of (1) insufficient evidence to prove beyond a reasonable doubt that Petitioner was the armed robber and (2) ineffective assistance of counsel at trial.  Neither of these claims warrant granting the writ of habeas corpus.  Accordingly, the petition for writ of habeas corpus will be denied

---

[1]Petitioner was incarcerated at the Robert Scott Correctional Facility in Plymouth, Michigan, when she filed her habeas petition.  She has since been transferred to the Women's Huron Valley Correctional Facility.  The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated.  Rule 2(a) of the Rule Governing § 2254 Cases; see also *Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006).  In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

*Bodell v. Stovall, 08-cv-15204*

## I. Background

## A. The Charges and Trial

Petitioner was charged in Eaton County with two counts of armed robbery.  The charges arose from the January 6, 2006 robbery of a Check-N-Go store[2] located in Charlotte, Michigan. Petitioner was convicted following a jury trial in the Eaton County Circuit Court.

Debra Etheridge testified that she was working at the Check-N-Go in Charlotte, Michigan on the evening of January 6, 2006, when a robber entered the store at about 5:50 p.m. and pointed a black gun at her.  The robber was a woman wearing a hat pulled down to her eyebrows, dark glasses, and a scarf tied around her neck and mouth. The robber gave a white plastic grocery bag to Etheridge's co-worker, Patricia Goshorn, and told her to put money in it.  Goshorn unlocked a cash drawer and put bills in the bag totaling about $1300.00.  The robber then told Etheridge and Goshorn to lie on the floor and count to 100.  After the robber left, Etheridge and Goshorn locked the door and called the police.  Etheridge testified that the robber was in her 50's, stocky, five-foot-two or five-foot-three in height and wearing a denim coat.  At the time of the robbery Etheridge did not recognize the robber.  At trial, she testified that she was 99% sure that it was the Petitioner, although on cross-examination, Etheridge admitted she could not be positive about her identification.

Goshorn testified that the robber was in her early sixties, stocky build, green eyes, five-foot-three or five-foot-four in height, with something awkward about her walk, wearing a denim coat, a scarf, dark knit gloves, a dark multicolored knit cap and dark prescription eyeglasses. Goshorn testified that she was "reasonably sure" that the Petitioner was the robber.

---

[2]Check-N-Go offers payday loans.

*Bodell v. Stovall, 08-cv-15204*

In order to bolster their identification case against the Petitioner, the prosecution offered evidence regarding two other robberies of Check-N-Goes.  The Check-N-Go in Hastings, Michigan, was robbed at 4:51 p.m. on January 6, 2006, the same day and less than an hour before the robbery in Charlotte.  A Check-N-Go in Kalamazoo, Michigan, was robbed on December 6, 2005 at 11:15 in the morning.  The robberies in Hastings and Kalamazoo were committed by an older woman similar in appearance to the robber of the Check-N-Go in Charlotte.  The other robberies were committed with similar methods, in that the robber pointed a gun at the employees, used white plastic grocery bags to hold the money, and told the employees to lay on their stomachs and count to one hundred.  Some of the witnesses to the other robberies identified Petitioner with various degrees of certainty as the robber of those stores.

Petitioner was a former employee of a Check-N-Go in Battle Creek, Michigan, but had resigned several months before the robberies.  Petitioner's former co-workers in Battle Creek testified that they saw videotapes of the robberies and opined, with various degree of certainty, that the Petitioner was the person in the videotapes.  Two co-workers identified a denim coat found in Petitioner's home as similar to one that Petitioner previously had worn and similar to a coat worn by the robber depicted in the videotapes.

The prosecution offered evidence that money was deposited in the Petitioner's bank accounts shortly after the Kalamazoo robbery and again after the robberies in Charlotte and Hastings.  The prosecution also offered evidence that the petitioner owed over $137,000 on numerous credit cards, and had very little money in her bank accounts.

The defense also relied upon the theory that the same person committed all three robberies and sought to establish full or partial alibis for the robberies.  Petitioner offered evidence that placed her in Battle Creek, Michigan, on January 6, 2006 as late as 3:35 p.m., wearing different

clothes than those worn by the robber, a little more than an hour prior to the Hastings' robbery. She argued that the distance between the locations meant that she did not have sufficient time to travel from Battle Creek to Hastings, and then to Charlotte, to commit those robberies.

The petitioner also introduced evidence intended to establish an alibi for the December 6, 2005 robbery of the Kalamazoo Check-N-Go that took place at 11:15 in the morning. Timothy Nycum testified that he did security work at a restaurant owned by the Petitioner and that he saw the Petitioner at the restaurant on December 6, 2005, sometime between 9:00 in the morning and 1:45 in the afternoon. Nycum's testimony differed from his previous statement, in which he had told investigators that he had been at the restaurant sometime between 11:00 and 11:45 in the morning of December 6. Nycum testified that he was unsure if he had seen the Petitioner's son at the restaurant on December 6, 2005, but that he believed that the Petitioner's daughter-in-law (later identified as Cathy Amaro, Petitioner's son's girlfriend) was at the restaurant that day.

Following Nycum's equivocal testimony about the time that he saw Petitioner on December 6, 2005, the Petitioner sought the admission of testimony by her son, Curtis Boughton and Boughton's girl friend, Cathy Amaro, as to Petitioner's whereabouts on the date of the Kalamazoo robbery. The prosecution opposed admission of Boughton's and Amaro's testimony on the grounds that it was offered in support of an alibi defense, that the defendant had failed to list Boughton and Amaro as potential alibi witnesses, and that Michigan law required the court to exclude alibi evidence where a defendant fails to file and serve written notice of alibi witnesses. The court excluded Boughton's and Amaro's testimony as it related to petitioner's location at the time of the Kalamazoo robbery.

*Bodell v. Stovall, 08-cv-15204*

Defense counsel then moved for a mistrial on the grounds of ineffective assistance of counsel. The trial court denied the motion for a mistrial. The court then inquired as to Boughton's potential testimony, and the prosecutor noted the limited relevance of the testimony.

| | |
|---|---|
| MS. FREEMAN: | And he just represented that Curtis Boughton wasn't gonna give a specific time frame. |
| MR. SAMOURIS: | Correct. He probably wouldn't be able to give a specific -- |
| MS. FREEMAN: | Then why, why use Mr. Boughton? |
| MR. SAMOURIS: | Because at least he would be able to say 'I saw my mom that morning' and 'I saw my mom right around the same time that the locksmith was there.' That's my understanding when Curtis saw her (sic) mom. Because he sees her (sic) mom on regular basis. |

## B. The Verdict, Sentence, and Appeal

On August 11, 2006, the jury found Petitioner guilty of two counts of armed robbery, M.C.L.A. 750.529. The Circuit Court sentenced Petitioner to 10 to 20 years in prison for the counts of armed robbery, with the counts to be served concurrently. Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following issues:

(1) There was insufficient evidence to prove beyond a reasonable doubt that defendant was the robber of the Check-N-go store in Charlotte, MI

(2) It was ineffective assistance of counsel for defense counsel's failure to include necessary alibi witnesses by notice to the Prosecutor as required under MCL 768.21 and the jury was thereby disallowed to hear Defendant's alibi testimony concerning the robberies.

The Michigan Court of Appeals affirmed the trial court. *People v. Bodell*, No. 274098, 2008 WL 274884 (Mich. App. Jan. 28, 2008). The Michigan Supreme Court denied leave to appeal. *People v. Bodell*, 481 Mich. 879 (2008).

5

*Bodell v. Stovall, 08-cv-15204*

### C. The Habeas Petition and Answer

Petitioner timely filed the pending federal habeas petition on December 18, 2008, raising

the following two claims:

> (1) There was insufficient evidence to prove beyond a reasonable doubt that
> defendant was the robber of the Check-N-go store in Charlotte, MI

> (2) It was ineffective assistance of counsel for defense counsel's failure to include
> necessary alibi witnesses by notice to the Prosecutor as required under MCL 768.21
> and the jury was thereby disallowed to hear Defendant's alibi testimony concerning
> the robberies.

The Respondent has answered the petition. In her answer, Respondent argues that the

petition should be denied because the decision of the Michigan court denying petitioner's

constitutional claims did not unreasonably apply clearly established federal law as set forth by

the United States Supreme Court. The Court agrees, therefore the petition will be denied.

### II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim -

> (1)      resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law as determined by the Supreme Court of
> the United States; or

> (2)      resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 408-06 (2000).  An "unreasonable application occurs" when "a state-decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because the court concludes in its independent judgment that the relevant state -court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

### III. Discussion

### A. Sufficiency of the Evidence

Petitioner argues that the prosecutor failed to present sufficient evidence proving beyond a reasonable doubt that Petitioner was, in fact, the robber of the Check-N-Go store in Charlotte. Petitioner contends that none of the witnesses could positively identify her as the robber because the robber had a scarf and dark glasses covering her face.  Petitioner also argues that there was not enough time for her to drive from Battle Creek to Hastings then on to Charlotte in the time frame that the robberies occurred.

When reviewing a sufficiency-of-the-evidence claim, a habeas court must examine "the evidence in the light most favorable to the prosecution" to determine whether any "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable

2:08-cv-15204-AJT-RSW   Doc # 10   Filed 08/24/11   Pg 8 of 17   Pg ID 1447

*Bodell v. Stovall, 08-cv-15204*

hypothesis except that of guilt.'" *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)

(quoting United *States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

The Michigan Court of Appeals denied petitioner's claim of insufficient evidence on the

merits, holding that the prosecution introduced constitutionally sufficient evidence of identity:

> Although the perpetrator's face was partially obscured by a hat pulled down to the
> eyebrows, glasses, and a scarf around the person's neck and mouth, complainant
> Debra Etheridge identified defendant, a former Check-N-Go employee whom
> Etheridge had previously met on at least three other occasions, as the robber and
> stated that she was 99 percent sure. However, on cross-examination, she indicated
> that she could not "positively identify" defendant. Complainant Patricia Goshorn also
> identified defendant in court, and was "reasonably sure" that she was the perpetrator.
> The employees at the Hastings store also identified defendant, although they
> acknowledged that they were not 100 percent certain. One was 99 percent sure. In
> addition to the eyewitness identification, defendant was linked to the crimes by the
> discovery of items at her residence, including a long denim jacket that was used by
> the perpetrator and which had a cap, plastic bags like those used in the robberies, and
> a BB gun in the pocket. Another BB gun and plastic bags were found in a box in the
> closet. Deposits made to defendant's bank accounts in the days following the
> robberies were similar to the amounts taken in the robberies. In addition, the
> prosecution presented surveillance videotapes and still photographs depicting the
> incidents.

*People v. Bodell,* 2008 WL 274886, *1 (Mich. App. 2008).

Petitioner challenges the identification testimony of the Charlotte Check-N-Go employees.

Debra Etheridge described the robber as wearing a hat pulled down to her eyebrows, dark

glasses, and a scarf. Patricia Goshorn described the robber as being 5 foot 3 or 4, white in early

60's, knit gloves, knit winter cap, brown scarf, stocky build, with denim coat coming down to her

knees, wearing prescription glasses, green eyes, wearing denim pants, and walking with a limp.

Petitioner argues that there is no explanation of how Goshorn could identify the color of her eyes

if she had glasses, a hat, and a scarf on. Additionally Petitioner has hazel eyes not green, and

Petitioner is 5 feet tall not 5' 3" or 4".

*Bodell v. Stovall, 08-cv-15204*

Petitioner's argument regarding the unreliability of the witness identification goes to the witness's credibility. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002). The determination of a witness's credibility is within the sole province of the finder of fact and is not subject to review. See *Dillard v. Prelesnik*, 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas corpus review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). Furthermore, the evidence is to be evaluated in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

Petitioner argues that she was in Battle Creek on the day of the Hastings and Charlotte Check-N-Go robberies. Robert Hadaway testified that he had lunch with the Petitioner from around 2:00 until about 3:05 in the afternoon of January 6, 2006. Hadaway last saw the Petitioner at around 3:35 pm at a gas station in Battle Creek. This testimony was corroborated at trial by an employee of the gas station who identified the Petitioner's credit card receipt dated 3:34 p.m. on January 6, 2006. Immediately after seeing her at the gas station, Hadaway got into his car and began to drive down the street, a few blocks down the street Hadaway thought he saw Petitioner's van pulling into a Target parking lot. Hadaway also testified that the Petitioner was wearing a green outfit when he saw her that day.

The Petitioner also offered the testimony of an employee of ABC Warehouse, a store in the same area as the Battle Creek Target. The ABC Warehouse employee testified that the defendant was shopping for freezers in the store in the early afternoon, sometime between 12:00 noon and 3:30 p.m., on January 6, 2006. Petitioner argues from this testimony that there just was not enough time to get gas at 3:35 p.m., go shopping at Target or ABC Warehouse, change

clothes, drive from Battle Creek to Hastings, rob the Check-N-Go there, and then drive to Charlotte and rob that store by 5:49 p.m.

Approximately 1 hour and 14 minutes elapsed between the time Hadaway last saw the Petitioner and the commission of the robbery in Hastings. At trial, Detective Robert King testified that he drove between the gas station in Battle Creek and the Check-N-Go store in Hastings and the drive time was only 44 minutes. Approximately 58 minutes elapsed from the time of the robbery in Hastings and the one in Charlotte. Detective King testified he also drove from the Check-N-Go in Hastings to the Check-N-Go in Charlotte, and that it took 42 minutes for him to drive that route, even accounting for a bypass that he had to take that may have added extra time. Given this testimony, a reasonable factfinder could conclude that it was possible for the Petitioner to change her clothes and drive from Battle Creek to the Check-N-Go in Hastings, rob it, and drive to the Check-N-Go in Charlotte by 5:49 p.m.

The prosecutor presented evidence of robberies at two other Check-N-Go stores in Kalamazoo and Hastings, both of which were committed in the same manner as the Charlotte Check-N-Go robbery. Witnesses from all three robberies described the same person: a white female, 5'1" to 5'3", with a stocky build, in her late forties to early sixties. In each of the robberies there was testimony that the robber walked with a noticeable limp. The robber also wore the same clothing in each robbery: a long denim coat, a scarf covering her face, dark glasses, a dark stocking cap, gloves, jeans, and white tennis shoes. Additionally, each witness reported that the robber carried a black handgun. Finally, in each case the robber brought white plastic grocery bags with her to collect the money she took.

In the Charlotte Check-N-Go robbery and the other two robberies, the robber robbed each store in the same manner. She pointed her gun at the clerks and ordered them to put their money

in the plastic bags. Once she received the money, she ordered the clerks to the back of the store, where she told them to lie on the ground and to count to 100. Videotapes and still pictures from each robbery were admitted into evidence at trial, which the prosecution argued showed that the same person robbed all three stores.

Evidence found at the Petitioner's house when the police executed a search warrant supported the prosecution's theory that the Petitioner was the Check-N-Go robber. Inside the house, the police found a denim coat matching the one worn by the robber in all three of the Check-N-Go robberies. The police also found white plastic bags, a dark colored stocking hat, a pair of leather gloves, and a black BB gun resembling a semi-automatic handgun. The Petitioner told the police executing the warrant that she had found the coat in her van the previous day and a BB gun in the pocket of the coat.

The police found bank receipts showing deposits to Petitioner's bank accounts made shortly after each of the robberies. The robber stole a total of $3,736.00 from the Hastings and the Charlottes stores on January 6, 2006. On January 9, 2006, two deposits of $3,000.00 and $810.00 were made to Petitioner's bank accounts. On December 6, 2006, the Kalamazoo Check-N-Go was robbed, and the robber stole $2,883.00. On December 7, 2005, two separate deposits of $1,000.00 and $953.00 were made to Petitioner's bank accounts. On January 3, 2006, another $1,015.00 was deposited. The Petitioner told police that the deposits came from cash that she had hidden in a shoe box in her closet.

The evidence found in the Petitioner's home and the receipts showing deposits for amounts similar to what was taken in the robberies is circumstantial evidence that Petitioner was the Check-N-Go robber. This evidence, the eye-witness identifications, and testimony that Petitioner had time to drive from Battle Creek to commit the robbery in Hastings, and then to

11

*Bodell v. Stovall, 08-cv-15204*

Charlotte to commit the robbery there, was sufficient for a rationale factfinder to conclude that the Petitioner was the perpetrator of the Charlotte robbery. The holding of the Michigan Court of Appeals rejecting Petitioner's claim of insufficient evidence did not unreasonably apply clearly established United States Supreme Court precedent. Petitioner is not entitled to habeas relief for her first claim.

### B. Ineffective Assistance of Counsel

Petitioner next contends that her trial attorney provided ineffective assistance of counsel by failing to preserve the admissibility of the testimony of two witnesses that would help to establish an alibi for the uncharged Kalamazoo robbery and therefore undercut the prosecution's case on identity in the charged Charlotte robbery. The Michigan Court of Appeals denied this claim on the merits, holding that the Petitioner had failed to establish constitutionally ineffective assistance of counsel. This Court may therefore grant relief only if the Michigan court's rejection of the claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

To establish ineffective assistance of counsel, Petitioner must demonstrate both that his attorney's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The "prejudice" prong requires "showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Petitioner must establish

both prongs in order to be entitled to habeas relief, and the reviewing court need not address both prongs of the *Strickland* test if the Petitioner fails to make a sufficient showing on one.

Petitioner contends that she was denied effective assistance of counsel when her attorney failed to give notice of necessary alibi witnesses to support the defense theory that she could not have committed the December 6, 2005, Kalamazoo robbery and therefore did not commit the January 6, 2006, Charlotte robbery. The trial court excluded any testimony by Curtis Boughton or Cathy Amaro that would place the Petitioner at another location at the time of the Kalamazoo robbery because Petitioner's counsel had not identified them as potential alibi witnesses prior to trial in accordance with Michigan criminal procedure.

The Michigan Court of Appeals rejected Petitioner's claims on the grounds that she failed to establish that she was prejudiced by her trial attorney's failure to preserve her opportunity to present the alibi testimony. A review of the record shows that the Michigan court's holding that counsel's failure to give notice that Boughton and Amaro would be potential alibi witnesses did not prejudice the defense, was not an unreasonable application of clearly established federal law.

Tim Nycum, the security contractor who testified that he saw Petitioner on the day of the Kalamazoo robbery, initially told investigators that he has seen the Petitioner at her restaurant December 6, 2005 between 11:00 and 11:45 a.m. At trial, however, Nycum testified that he was at Petitioner's restaurant for less than an hour at some point between 9:00 a.m. and 1:45 p.m, but could not be more specific as to the time. Nycum testified that he could not be sure whether or not he saw Curtis Boughton that day, but believed that he saw Amaro, who he identified as Petitioner's daughter-in-law. Nycum testified that Petitioner was at her restaurant during the 45 minutes he was working and that she gave him a check at that time, which check was introduced into evidence.

*Bodell v. Stovall, 08-cv-15204*

To reinforce Nycum's testimony and to narrow the time period, the Petitioner sought to have Boughton testify that he saw both Nycum and the Petitioner at the restaurant on December 6. Petitioner also sought to have Amaro testify that she saw both the Petitioner and Nycum at the restaurant that day.

The prosecution objected to the proposed testimony on the grounds that it was testimony introduced to establish an alibi defense and that the defendant had failed to list Boughton and Amaro in Petitioner's notice of proposed alibi witnesses. Defense counsel stated on record his reasons for not listing Boughton or Amaro:

> MR. SAMOURIS: Yes, Your Honor. With respect to Curtis Boughton, he is actually in, there's a notice of additional alibi witness. That witness was Tim Nycum. And, it is listed within the, and I could even pull it here, it's listed that Curtis Boughton was also present at the time.
>
> Now, at the time I made these alibi defense, alibi notices, I did not had knowledge that Mr. Nycum was going to, I guess, be more vague than he was in my initial conversation than he was with, I guess, here on the stand. Nonetheless, in that alibi notice I did put down that Curtis Boughton and others were present. Now at that time I couldn't, I didn't know who those others were. There were workers. I didn't know their last names, so I did not list them. I did not list Curtis Boughton as an alibi witness because he wasn't –
>
>           ...
>
> What I wanted to do was simply have a non-relative as an alibi witness, because I think that's a lot more credible and it's a lot more believable to the jury. And that's who I listed.

TT Vol. III, pp.. 118-19. As for Amaro, counsel stated he did not list her as an alibi witness for the December 6 robbery because he only became aware that she was at the restaurant on December 6 when he heard Nycum testify to that in court.

When questioned by the court, Petitioner's counsel stated that Boughton could not provide an actual time frame for when he was at the restaurant at the same time Nycum was there. Nycum could not provide a time period in which he saw the Petitioner on December 6 that

excluded the possibility that Petitioner had committed the Kalamazoo robbery, and therefore his alibi testimony was ineffective. Since, according to the Petitioner's counsel, Boughton also could not provide a specific time period, Boughton would not have been able to rehabilitate the failed alibi testimony of Nycum. As a result, Boughton's failure to testify as an alibi witness in this case did not result in prejudice.

Amaro was asked by the defense if she had seen Nycum on December 6, 2006, and responded that she saw him in the afternoon after getting off work. The prosecutor objected to this testimony and it was stricken from the record. Although Amaro's answer was stricken from the record, it indicates that she would have placed Nycum in the restaurant in the afternoon, not in the morning when the Kalamazoo Check-N-Go was robbed. This also supports the Michigan Court of Appeals' conclusion that the exclusion of Amaro's alibi testimony did not prejudice the defense, because it suggests that Amaro would not have rehabilitated the failed alibi testimony of Nycum.

"[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. To demonstrate prejudice sufficient to sustain an ineffective assistance of counsel claim, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695.

On this record, Petitioner has failed to establish a reasonable probability that the result of the trial would have been different had trial counsel produced the testimony of Boughton and Amaro in support of an alibi defense. Consequently, the Michigan court's conclusion that Petitioner was not prejudiced by her attorney's failure to produce alibi witnesses did not

2:08-cv-15204-AJT-RSW   Doc # 10   Filed 08/24/11   Pg 16 of 17   Pg ID 1455

unreasonably apply *Strickland*.  The Petitioner is not entitled to habeas relief on her second claim.

## IV.  Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant....  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Rule 11, Rules Governing Section 2254 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir.1997).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (internal quotes and citations omitted).  The Court finds that its resolution of the petitioner's second claim would be debatable among reasonable jurists. The Court therefore does issue a certificate of appealability as to that issue.

*Bodell v. Stovall, 08-cv-15204*

**V. Conclusion**

The state appellate court's rejection of Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of federal law as determined by the Supreme Court, or an unreasonable determination of the facts. Accordingly, the petition for writ for habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

It is further ORDERED that a certificate of appealability is DENIED on all grounds raised by the petitioner.


s/Arthur J. Tarnow_____
ARTHUR J. TARNOW
Senior United States District Judge

Dated: August 24, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 24, 2011, by electronic and/or ordinary mail.

s/Catherine A. Pickles_____
Judicial Assistant